UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JONATHAN MULLER,

          Plaintiff,          Case No. 1:10-cv-717

v.                                     Honorable Paul L. Maloney

ANNE SCOTT,

          Defendant.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff shall pay the initial partial filing fee when funds are available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.        Factual allegations

Plaintiff Jonathan Muller presently is incarcerated at the Parnall Correctional Facility, but complains of events that occurred at the Florence Crane Correctional Facility (ACF). In his *pro se* complaint, Plaintiff, who purports to represent a class of ACF prisoners, sues ACF Grievance Coordinator Anne Scott for violating his First Amendment rights.[1]

Plaintiff argues that Defendant Scott violated his First Amendment right of access to the courts by not processing and arbitrarily rejecting Plaintiff's grievances so that Plaintiff could not exhaust his available administrative remedies. Defendant Scott supposedly rejected grievances that had legitimate claims of retaliation, harassment, discrimination and Eighth Amendment violations. Plaintiff attached the Step I grievance form for Grievance No. ACF-2009-11-1099-27A to his complaint, which was rejected by Defendant Scott on November 24, 2009. (*See* Ex. 1 to Compl., Page ID #14, docket #1.) Plaintiff appealed that grievance through the three-step grievance process. Plaintiff also claims that Defendant Scott violated his First Amendment right of access to the courts by placing him on modified access. Plaintiff did not provide the Court with any documentation regarding the beginning of his first modified access period. Plaintiff, however, attached Defendant Scott's request to extend Plaintiff's modified access period for thirty days to his complaint. According to that document, Plaintiff's first modified access period ended on March 24, 2010. (*See* Ex. 1 to Compl., Page ID #9.) In June 2010, Defendant Scott again recommended that

---

[1] Although Plaintiff Muller includes "the prisoners of Florence Crane Correctional Facility" as plaintiffs, only Plaintiff Muller signed the complaint. (Compl. at 2, Page ID #2, docket #1.) As discussed in Section II, Plaintiff Muller cannot represent the interests of other prisoners. Therefore, the Court will construe the allegations in Plaintiff Muller's complaint as Plaintiff Muller's claims rather than the ACF prisoners' claims.

Plaintiff be placed on modified access. (*Id.* at Page ID #10.) Plaintiff is on modified access until September 12, 2010. (*Id.* at Page ID #11.)

Plaintiff further alleges that Defendant Scott retaliated against him in violation of his First Amendment rights by rejecting his grievances and placing him on modified access. Finally, Plaintiff states that Defendant Scott's actions violated Michigan Department of Corrections (MDOC) Policy Directive 03.02.130, which governs the processing of prisoner grievances.

For relief, Plaintiff requests declaratory and injunctive relief and monetary damages.

II.     Standing

To the extent Plaintiff complains that other prisoners at ACF have been deprived of their First Amendment rights, he lacks standing to pursue their claims. Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States, the parties may plead and conduct *their own cases* personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). The statute clearly makes no provision for a *pro se* party to represent others. The federal courts have long held that section 1654 preserves a party's right to proceed *pro se*, but only with respect to his or her own claims. Only a licensed attorney may represent other persons. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of others. *See Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992); *O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v.*

*LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978). Plaintiff therefore lacks standing to remedy the First Amendment violations of other ACF prisoners.

To the extent that Plaintiff purports to bring a class action, the Court must first determined whether a class of ACF prisoners can be certified. For a case to proceed as a class action, the Court must be satisfied on a number of grounds, including the adequacy of class representation. *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001). Because Plaintiff is an incarcerated, *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Therefore, a class of ACF prisoners cannot be certified.

    III.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Access to the Courts

Plaintiff alleges that Defendant Scott violated his First Amendment right of access to the courts by (1) not processing and arbitrarily rejecting his grievances so that he could not exhaust his available administrative remedies, and by (2) placing him on modified access.

Plaintiff's first claim against Defendant Scott for failing to process and arbitrarily rejecting his grievances assumes that there is a constitutional right to file a grievance.  The Sixth Circuit has recognized that the filing of a grievance is protected First Amendment conduct for which a prisoner may not be subjected to retaliation.  *See Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir.

1999). The Sixth Circuit, however, has never held that an inmate has an independent constitutional right to file an institutional grievance, apart from a First Amendment retaliation claim. In contrast, courts regularly have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff complains of his grievances being rejected by Defendant Scott, it is clear that Plaintiff was able to utilize the grievance process. In fact, Plaintiff attached Grievance No. ACF-2009-11-1099-27A to his complaint, which he appealed through the three-step grievance process. Plaintiff simply disagrees with Defendant Scott's decision to reject his grievances, which states no claim of constitutional dimension. *See Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998) (prisoner's allegation that grievance was improperly rejected does not present a deprivation of any federal fight, as there is no inherent constitutional right to an effective prison grievance procedure).

Even if Plaintiff had been improperly prevented from pursuing a grievance through the grievance process, his right of access to the courts to petition for redress of his grievances (i.e., by filing lawsuit) cannot be compromised by his inability to file an institutional grievance. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Defendant Scott refused to process Plaintiff's grievance and Plaintiff was no

longer able to exhaust his administrative remedies, then that would be the end to the possible administrative remedies with regard to that grievance. Since all possible administrative remedies would have been exhausted as to that grievance, a court would have jurisdiction to hear a related federal claim. Accordingly, Plaintiff's First Amendment claims regarding the grievance process and the rejection of his grievances fail.

Plaintiff also argues that his placement on modified access violated his First Amendment right to access the courts. Under Michigan Department of Corrections Policy Directive 03.02.130, a prisoner is placed on modified access for filing "an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language . . . or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH (effective July 9, 2007). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I grievance coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

Modified access does not deny a Michigan prisoner the ability to seek redress for grievances in prison. *See Kennedy v. Tallio,* No. 01-1386, 2001 WL 1176400, at *1 (6th Cir. Sept. 26, 2001); *Corsetti v. McGinnis,* No. 00-1409, 2001 WL 1298830, at *2 (6th Cir. Aug. 7, 2001). While on modified access, a prisoner is not barred from filing grievances; rather, a prisoner is merely required to obtain permission from the grievance coordinator before filing a grievance that otherwise conforms to the requirements of the grievance policy. *Kennedy*, 2001 WL 1176400, at *2 (citation omitted). There is nothing improper about a review process for a prisoner who has abused the grievance process in the past.

Modified access also does not deny a prisoner the ability to seek redress for grievances in federal court. As stated above, 42 U.S.C. § 1997e(a) requires prisoners to exhaust "such administrative remedies as are available" prior to filing suit in federal court. 42 U.S.C. § 1997e(a); *see also Lewis*, 518 U.S. at 343; *Bounds*, 430 U.S. at 821-24. If the grievance coordinator denies the request of a prisoner on modified access for a grievance form, the prisoner has exhausted his "available administrative remedies" and the prisoner may file an action in federal court. *See Kennedy*, 2001 WL 1176400, at *2.

Because Plaintiff's placement on modified access did not prevent him from filing grievances in prison or from filing an action in federal court, he fails to state a claim arising from his First Amendment right of access to the courts.

**B.     Retaliation**

Plaintiff contends that Defendant Stone rejected his grievances and placed him on modified access in retaliation for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996)). The right to file a grievance, however, is protected only if the grievance is not frivolous. *Herron*, 203 F.3d at 415 (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). Plaintiff argues that Defendant Scott has rejected grievances, which have legitimate claims of retaliation, harassment, discrimination and Eighth Amendment violations. Assuming that Plaintiff' grievances are not frivolous, Plaintiff has satisfied the first prong for a First Amendment retaliation claim.

Plaintiff, however, cannot satisfy the second prong for a retaliation claim. The rejection of a grievance and the placement of a prisoner on modified access would not deter a person of ordinary firmness from filing grievances or from bringing a civil rights action in federal court. *See Kennedy*, 2001 WL 1176400, at *2; *Corsetti*, 2001 WL 1298830, at *2. Defendant Scott's rejection of Plaintiff's grievances did not prevent Plaintiff from filing future grievances. Defendant Scott rejected Plaintiff's Step I grievance for Grievance No. ACF-2009-11-1099-27A on November 24, 2009. On Defendant Scott's June 7, 2010 modified access request, she listed eight 2010 grievances filed by Plaintiff. (*See* Ex. 1 to Compl., Page ID #10, docket #1.) Further, Plaintiff was still able to appeal his grievance through the three-step grievance process after Defendant Scott rejected his Step I grievance. As Plaintiff was able to exhaust his administrative remedies, he is able to bring a civil rights action in federal court *See* 42 U.S.C. § 1997e(a)

Moreover, Plaintiff's placement on modified access did not prevent him from filing grievances. Modified access merely enables a grievance coordinator to screen a prisoner's grievances prior to filing to determine whether they are grievable, vague or duplicative. *See*

*Kennedy*, 2001 WL 1176400, at *2 (citation omitted); *see also Walker v. Mich. Dep't of Corr.,* No. 04-1347, 2005 WL 742743, at *3-4 (6th Cir. Apr. 1, 2005) ("Here, an ordinary person of reasonable firmness would not be deterred from filing legitimate grievances by a policy that merely provided that a grievance officer would screen frivolous grievances.") Even though Plaintiff was on modified access, he still attempted to file grievances. (*See* Ex. 1 to Compl., Page ID #9.) Plaintiff's modified access status also did not prevent him from filing an action in federal court. *See* 42 U.S.C. § 1997e(a) (the exhaustion requirement only mandates exhaustion of available administrative remedies). As stated in Section III(A)(2), when a grievance coordinator denies a modified-access prisoner a grievance form, that prisoner has exhausted his available administrative remedies and may file an action in federal court. Therefore, Plaintiff fails to state a claim for retaliation.

### C. State-law Claims

Plaintiff alleges that Defendant Stone failed to comply with MDOC Policy Directive 03.02.130. The failure to comply with a policy directive does not rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state

law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: September 2, 2010 　　　　　　　　/s/ Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　Chief United States District Judge